**Opinion filed March 3, 2011**



In The

# Eleventh Court of Appeals

_____

## No. 11-10-00040-CV

_____

### IN THE INTEREST OF C.A.H., A CHILD

**On Appeal from the 106th District Court**

**Gaines County, Texas**

**Trial Court Cause No. 05-01-14883**

**M E M O R A N D U M   O P I N I O N**

Watasha Houston appeals from the trial court's order modifying the parent-child relationship between her and her son, C.A.H. We reverse and render in part, and we reverse and remand in part.

*Background Facts*

C.A.H. is six years old. Houston and Cedric Johnson are the parents of C.A.H. In an order dated December 20, 2004, Houston was granted the right to designate C.A.H.'s primary residence. On April 8, 2008, Johnson filed a petition to modify the parent-child relationship. In part, Johnson sought to be appointed as the managing conservator of C.A.H. with the right to designate C.A.H.'s primary residence. Following a hearing, the trial court entered temporary orders denying Johnson's request for the exclusive right to designate C.A.H.'s residence.

On May 5, 2008, Johnson filed a motion to modify the trial court's temporary orders. He sought to be appointed as C.A.H.'s temporary managing conservator with the right to determine C.A.H.'s temporary residence. The trial court scheduled this motion for hearing on August 14, 2008. Houston's counsel withdrew the day before the hearing, and Houston represented herself at the hearing. Johnson called his sister, Sheila D. Mitchell, and Sheila's husband, Willie Ray (Ray-Ray) Mitchell, as witnesses at the hearing. Sheila and Ray-Ray are C.A.H.'s aunt and uncle. After the evidence was concluded, the trial court found that grounds existed "to nullify" the temporary orders that had allowed Houston to remain as the managing conservator with the right to designate C.A.H.'s residence. The trial court stated, "Gosh, I wish he was your kid, Ray-Ray and Sheila. Because, quite frankly, Mr. Johnson, I don't think you've been a very good provider either." The trial court also stated, "I'm going to go out on a limb here" and then stated that it would be naming Houston and Johnson as parent temporary joint managing conservators and the Mitchells as nonparent temporary joint managing conservators and that the Mitchells would have the right to designate C.A.H.'s residence. On September 3, 2008, the trial court entered temporary orders to that effect.

On January 7, 2009, Houston filed a petition to modify the temporary orders. She sought to be appointed as C.A.H.'s sole managing conservator. Johnson's counsel appeared as counsel of record for the Mitchells. Although the Mitchells had not filed a petition in intervention in the case, the trial court referred to them as intervenors in the record. On May 14, 2009, the trial court heard Houston's motion to modify the temporary orders, and on May 15, 2009, the trial court entered an order denying the motion.

On October 1, 2009, the trial court held the final hearing on Johnson's petition to modify parent-child relationship. Houston was represented by new counsel at the hearing. The Mitchells had not filed a petition in intervention, but the trial court referred to them as intervenors at the hearing. After the evidence was concluded, the trial court stated that "there ha[d] been some improvement, certainly significant improvement, made in [Houston's] life." However, the trial court concluded that it was in C.A.H.'s best interest for Houston and Johnson to be named parent joint managing conservators and for the Mitchells to be named nonparent joint managing conservators with the right to designate C.A.H.'s primary residence. On November 12, 2009, the trial court entered its final order. In the order, the trial court appointed Houston and Johnson as parent joint managing conservators and the Mitchells as nonparent joint

managing conservators, and the trial court gave the Mitchells the exclusive right to designate C.A.H.'s primary residence. It is from this order that Houston appeals. Johnson and the Mitchells are appellees in this cause.

*Issues on Appeal*

Houston presents two issues for review. In her first issue, she contends that the trial court abused its discretion in appointing the Mitchells as nonparent joint managing conservators of C.A.H. because they were never proper parties to the suit. In her second issue, she contends that the trial court abused its discretion in appointing the Mitchells as nonparent joint managing conservators of C.A.H. because the evidence was legally and factually insufficient to establish that the Mitchells had standing to intervene in this suit.

*Standing*

In both of her issues, Houston argues that the Mitchells failed to satisfy their burden of establishing their standing to intervene in this suit. Standing, which is implicit in the concept of subject-matter jurisdiction, is a threshold issue in a custody proceeding. *In re Vogel*, 261 S.W.3d 917, 920 (Tex. App.—Houston [14th Dist.] 2008, orig. proceeding); *In re SSJ-J*, 153 S.W.3d 132, 134 (Tex. App.—San Antonio 2004, no pet.). A party seeking conservatorship of a child must have standing to seek such relief. *In re SSJ-J*, 153 S.W.3d at 134. In a suit affecting the parent-child relationship, standing is governed by the Texas Family Code, and the party seeking relief must allege and establish standing within the parameters of the language used in the statute. *In re H.G.*, 267 S.W.3d 120, 124 (Tex. App.—San Antonio 2008, pet. denied). Standing cannot be conferred by consent or waiver and may be raised for the first time on appeal. *In re A.M.S.*, 277 S.W.3d 92, 95 (Tex. App.—Texarkana 2009, no pet.).

This is a modification suit. Section 156.002(b) of the Texas Family Code provides that "[a] person or entity who, at the time of filing, has standing to sue under Chapter 102 may file a suit for modification in the court with continuing, exclusive jurisdiction." TEX. FAM. CODE ANN. § 156.002(b) (Vernon Supp. 2010). Section 102.004 governs standing for grandparents and other persons. TEX. FAM. CODE ANN. § 102.004 (Vernon 2008). The Mitchells cite Section 102.004(b) in their brief. Section 102.004(b) provides, in part, as follows:

> [T]he court may grant a grandparent or other person deemed by the court to have had substantial past contact with the child leave to intervene in a pending suit filed by a person authorized to do so under this subchapter if there is satisfactory proof to the court that appointment of a parent as a sole managing conservator or

both parents as joint managing conservators would significantly impair the child's physical health or emotional development.

In a family law case, when a party is statutorily required to establish standing with "satisfactory proof," the evidentiary standard is by a preponderance of the evidence. *In re A.M.S.*, 277 S.W.3d at 96 n.4.

Section 102.004(b) applies to suits seeking managing conservatorships as well as those seeking possessory conservatorships. *Whitworth v. Whitworth*, 222 S.W.3d 616, 621 (Tex. App.—Houston [1st Dist.] 2007, no pet.); *In re Hidalgo*, 938 S.W.2d 492, 496 (Tex. App.—Texarkana 1996, no writ). A party seeking to establish standing to intervene under Section 102.004(b) must provide satisfactory proof to the trial court that appointing one parent as the sole managing conservator or both parents as joint managing conservators "would significantly impair the child's physical health or emotional development." Section 102.004(b). A nonparent seeking to overcome the presumption that a parent is to be named managing conservator of the child faces the same burden. The nonparent must show that appointing a parent as managing conservator or both parents as managing conservators "would significantly impair the child's physical health or emotional development." *See* TEX. FAM. CODE ANN. § 153.131 (Vernon 2008). To meet this burden, the nonparent must offer evidence of specific acts or omissions of the parent that demonstrate that an award of custody to the parent would result in physical or emotional harm to the child. *Lewelling v. Lewelling*, 796 S.W.2d 164, 167 (Tex. 1990); *Whitworth*, 222 S.W.3d at 623. There must be evidence to support the logical inference that some specific, identifiable behavior or conduct of the parent will probably cause that harm. *Whitworth*, 222 S.W.3d at 623. The link between the parent's conduct and harm to the child may not be based on evidence that merely raises a surmise or speculation of possible harm. *Id.*

In this case, the Mitchells did not attempt to satisfy the statutory requirements for intervention. They did not seek leave to intervene. They did not file a petition in intervention. Thus, they never alleged any facts to support a claim that they had standing to intervene. Nor did they present evidence at the final hearing that appointing Houston as C.A.H.'s sole managing conservator "would significantly impair [his] physical health or emotional development." *See* Section 102.004(b). The Mitchells failed to meet their burden of alleging and establishing that they met the statutory requirements for standing under Section 102.004(b) or any other section of

the Family Code.  Therefore, the trial court abused its discretion in appointing them as joint managing conservators of C.A.H.  Houston's issues are sustained.

*This Court's Ruling*

We reverse the trial court's order in its entirety, render judgment that the Mitchells lacked standing when the trial court entered its temporary orders and final order, and remand this case to the trial court for further proceedings consistent with this opinion.


TERRY McCALL

JUSTICE


March 3, 2011

Panel consists of:  Wright, C.J.,
McCall, J., and Strange, J.